UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

MARTHA L. HERNANDEZ,    ) ED CV 07-01397-SH
                                )
          Plaintiff,   ) MEMORANDUM  DECISION
                                  )
    v.                     )
                                  )
MICHAEL J. ASTRUE,       )
Social Security Administration,   )
                                  )
          Defendant.   )
_____)

## I. PROCEEDINGS

This matter is before the court for review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned.  The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  Plaintiff and Defendant have filed pleadings, Defendant has filed

1

the certified transcript of record, and the parties have filed a Joint Stipulation.  For the reasons below, the Commissioner's decision denying benefits is affirmed.

## II.  <u>BACKGROUND</u>

Plaintiff is a 47-year-old female who has worked in the U.S. from 1991 to 2003.  From 1991 to 1994, Plaintiff worked as a farmworker, picking potatoes and lifting ten-pound objects for 72 hours a week.  From 1995 to 1996, Plaintiff was a nursery laborer, planting and watering plants.  From 1996 to 2003, Plaintiff was a production line worker.  (Administrative Record ["AR"] 117).  She worked in a factory setting where she performed repetitive motions with her hands and wrists, lifting, moving, and cleaning 50-pound auto parts up to eight to ten hours a day (AR 117, 160).  As a result, Plaintiff began experiencing bilateral palm and wrist pain with numbness and tingling radiating to the fingertips of both hands.  Sometimes, the pain would radiate up both arms.  (AR 160).  Plaintiff also began experiencing pain in her knees.  She was subsequently diagnosed with bilateral carpal tunnel syndrome, left knee disorder, and right knee disorder.  (AR 331-361).  Her last day of work was May 5, 2003.  (AR 393).

On September 27, 2004, Plaintiff filed applications for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI.  In both applications, Plaintiff alleged disability beginning May 5, 2003.  The claims were initially denied on September 27, 2004 and upon reconsideration on May 27, 2005.  Plaintiff then filed a timely written request for a hearing on June 27, 2005.  The hearing took place on November 16, 2006 in San Bernardino, California.  Plaintiff appeared and testified.  She was

represented by an attorney, Eric R. Hunt.  A vocational expert (VE), Corinne J. Porter, also appeared.  (AR 18).

At the hearing, Plaintiff testified that she experienced problems with her hands and knees.  Plaintiff stated that due to severe carpal tunnel syndrome in both of her wrists, she experienced difficulty with marked and severe limitations in both hands.  (AR 394-395).  In fact, in 2002, she had to undergo surgery to decompress her left and right carpal canals.  (AR 120-121, 123).  Plaintiff further testified that her knee problems were so serious that she cannot stand or walk for long periods of time.  (AR 396).  She said that X-rays indicated that she has a degenerative joint disease in both knees and requires a treatment regimen of painkillers and shots.  (AR 398, 408).

On December 13, 2006, the ALJ found that Plaintiff was disabled only between May 5, 2003 and July 11, 2004.  However, the ALJ found that Plaintiff medically improved as of July 12, 2004 and from that date forward was no longer disabled.  (AR 25).  The ALJ further found that although Plaintiff would be unable to perform her past relevant work, she would nevertheless be capable of performing alternative jobs existing in significant numbers in the national economy. (AR 28-29).

Plaintiff challenges the ALJ's decision on two grounds.  Plaintiff alleges that the ALJ erred in (1) not properly considering the relevant medical evidence record in finding medical improvement as of July 12, 2004; and (2) not properly considering and assessing Plaintiff's subjective complaints and credibility.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III. <u>DISCUSSION</u>

**ISSUE NO. 1**: The ALJ properly considered the relevant medical evidence
record in finding medical improvement as of July 12, 2004.

Plaintiff asserts that the ALJ improperly found medical improvement as of July 12, 2004 based upon a worker's compensation "permanent and stationary" report indicating that Plaintiff was permanent and stationary as of that date. Plaintiff maintains that there is no evidence of significant medical improvement; rather, her condition has been stable and unchanging since well before July 12, 2004.

Defendant responds that the ALJ properly considered the medical evidence of record. Plaintiff's treating physician, and State Agency reviewing physicians, concluded that Plaintiff improved and had a residual functional capacity (RFC) for light work. Defendant argues the ALJ accorded proper weight to these opinions.

20 C.F.R. 416.994 provides evaluation steps to determining whether Plaintiff's disability continues or ends in the case of disabled adults:

(1) Does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404 of 20 C.F.R. 416.994?

(2) If not, has there been medical improvement?

(3) If so, is it related to the claimant's ability to do work?

(4) If there has not been medical improvement, do any of the exceptions in paragraphs (b)(3) and (b)(4) of 20 C.F.R. 416.994 apply?

(5) If there has been medical improvement and it is related to the

4

claimant's ability to do work, are all of the claimant's current impairments in combination severe?

(6) If so, does the claimant have the current ability to do substantial gainful activity in accordance with work done in the past?

(7) If not, can the claimant do other work?  20 C.F.R. 416.994(b)(5).

At issue here is whether there has been "medical improvement," so this Court begins its analysis at Step Two.  20 C.F.R. 416.994(b)(1)(i) defines "medical improvement" as any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that she was disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with the claimant's impairment(s).  20 C.F.R. 416.994(b)(1)(i).

Here, the ALJ found that medical improvement occurred as of July 12, 2004.  In reaching this conclusion, the ALJ relied on Plaintiff's treating physician's permanent and stationary report.  (AR 25).

Plaintiff's treating physician, Dr. Kevin Gohar, prepared a permanent and stationary report on July 12, 2004.  Dr. Gohar described Plaintiff's initial diagnoses, subsequent course of treatment, current physical examination, and final diagnostic impression.  (AR 180-185).  He noted that since treatment, Plaintiff experienced a decrease in symptoms and diagnoses.  Plaintiff's initial diagnoses included repetitive trauma in both shoulders, trigger point posterosuperior angle of the scapula, tenderness over the trapezius muscles, osteoarthritis and synovitis of the carpometacarpal joint of the right thumb,

tenosynovitis and metacarpophalangeal joint of the right thumb, and tenosynovitis of the left thumb.  (AR 181).

However, after a treatment regimen of physical therapy, medications, use of a wrist brace, and bilateral carpal tunnel releases by Dr. Ramana Rao, Plaintiff reported improvement in her symptoms.  (AR 181-182).  Additionally, an updated physical examination of Plaintiff's cervical spine, shoulders, and hands revealed only tenderness.  (AR 183).  A final diagnostic impression included musculoligamentous strain and sprain of the cervical spine and carpal tunnel syndrome of both wrists, a marked improvement from the initial diagnoses.  Finally, under the "Discussion and Recommendation" portion of the report, Dr. Gohar wrote that Plaintiff sought his services on August 4, 3003 and "has since been under my care and has reached maximum improvement from treatment." (AR 185).

Plaintiff argues that another doctor, Dr. Vito Caruso, reported that Plaintiff's conditions were worse than the ALJ found them to be.  She asserts that Dr. Caruso's progress report lists Plaintiff's post-operative diagnosis as continuing to be right-sided carpal tunnel syndrome.  Plaintiff also states that the report documents her symptoms of a burning sensation in the fingers with pain radiating up to the elbows.  (AR 278).  What Plaintiff fails to mention, however, is that the same report recommends Plaintiff to only conservative treatment, Motrin.  In addition, it states under "work status" that Plaintiff's temporary total disability would only last until April 15, 2004, nearly three months before July 12, 2004.  (AR 278).

Plaintiff reported improvement, Dr. Gohar's report shows she experienced a decrease in medical severity of her impairments, and Dr. Caruso's report states

that her temporary total disability would only last until April 2004.  Therefore, there was "medical improvement."

At Step Three, this Court must determine if the medical improvement is related to Plaintiff's ability to work.  Medical improvement is related to the claimant's ability to work if there has been a decrease in severity of the impairment(s) present at the time of the most recent favorable medical decision, and an increase in the claimant's functional capacity to do basic work activities. 20 C.F.R. 416.994(b)(1)(iii).  Basic work activities means the abilities and aptitudes necessary to do most jobs.  Included are exertional abilities such as walking, hearing, speaking, remembering, using judgment, dealing with changes and dealing with both supervisors and fellow workers.  20 C.F.R. 416.994(b)(1)(iv).

Here, the ALJ looked at RFC assessment reports by State Agency physicians before concluding that Plaintiff had the functional capacity to do basic work activities.  (AR 26).

The first RFC assessment report was completed by State Agency consulting experts on December 1, 2004.  It indicates that Plaintiff could occasionally lift and/or carry twenty pounds and frequently ten pounds.  She could also stand and/or walk for six hours in an eight-hour workday and sit for six hours.  (AR 305).  The second RFC assessment report was completed by State Agency medical consultants in May 2005.  It indicates that Plaintiff could occasionally lift and/or carry twenty pounds and frequently ten pounds.  She could also stand and/or walk for at least two hours in an eight-hour workday and sit for six hours.  (AR 323).  The two reports are consistent.  The second report also takes into account the opinions of two orthopedists, Drs. Bunsri Sophon and

Laurence Meltzer.  Dr. Sophon opined that Plaintiff can do light work with frequent use of her upper extremities.  Dr. Meltzer opined that Plaintiff can occasionally lift twenty pounds, frequently lift ten pounds, stand two out of eight hours without a cane, and stand four out of eight hours with a cane.  The second report also states that Plaintiff "is capable of at least a narrow range of light work."  (AR 329).

Multiple physicians examined Plaintiff and concluded she had the ability to lift, carry, stand, walk, and do light work.  These are related to basic work activities as defined in 20 C.F.R. 416.994(b)(1)(iv), including walking.  Therefore, the medical improvement was related to Plaintiff's ability to work.

Since Plaintiff was found to have medically improved, and such improvement was related to her ability to do work, this Court must then consider Step Five and determine whether Plaintiff's current impairments in combination are severe.  Impairments are considered severe in nature when the evidence shows that all of the claimant's current impairments in combination significantly limit the claimant's physical or mental abilities to do basic work activities.  20 C.F.R. 416.994(b)(5)(v).

As was established above, Plaintiff was examined by State Agency physicians and two orthopedists.  All physicians acknowledged Plaintiff's past medical history and current limitations.  However, they concluded that there was some work Plaintiff could do despite her impairments.  They described Plaintiff's RFC and her current abilities to perform some basic work activities, including lifting, carrying, standing, walking, and doing light work.  In other words, none of Plaintiff's impairments were deemed sufficiently severe so as to

8

significantly limit Plaintiff's physical or mental abilities to do basic work activities.

At Step Six, the Court must determine if Plaintiff has the current ability to do substantial gainful activity in accordance with work done in the past. If the claimant can still do work she has done in the past, disability will be found to have ended. 20 C.F.R. 416.994(b)(5)(vi). The ALJ concedes that Plaintiff has been unable to perform past relevant work, so the question becomes whether Plaintiff can do other work. (AR 28). Step Seven states that if the claimant can do other work, disability will be found to have ended. If not, disability will be found to continue. 20 C.F.R. 416.994(b)(5)(vii).

Here, the ALJ asked the VE at Plaintiff's hearing whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC as of July 12, 2004. The VE testified that given all of these factors, the individual would be able to perform the requirements of representative occupations such as bench assembler, electronics worker, or eye drops assembler. There are 4,000 bench assembler jobs in the region and 40,000 nationally after erosion of 90%, 1,500 electronics worker jobs in the region and 10,000 nationally, and 3,000 eye drops assembler jobs in the region and 65,000 nationally after erosion of 50%. (AR 406-407).

The VE fully considered Plaintiff's limitations before concluding that Plaintiff had the means and RFC to do other work existing in significant numbers in the regional and national economy.

In sum, the finding was not in error, and Plaintiff's condition was correctly found to have improved and her disability ended.

**ISSUE NO. 2**:   The ALJ properly considered and assessed Plaintiff's
subjective complaints and credibility.

Plaintiff next asserts that the ALJ did not properly consider and assess her
subjective complaints and credibility.  Plaintiff contends that she is capable of
engaging in certain limited light activities of daily living for brief periods of
time.  However, she claims she is simply incapable of sustaining those activities
as would be required by any full time competitive employment, due to the
symptoms and limitations resulting from her musculoskeletal impairments.
Plaintiff asserts the ALJ erred in failing to provide clear and convincing reasons
for rejecting her pain testimony.

Defendant responds by saying that the ALJ properly rejected Plaintiff's
pain testimony because Plaintiff was not credible.  This was supported by
Plaintiff's demeanor during the hearing, her use of only conservative treatment,
and the report of her daily activities, which are transferable to a work setting.
In deciding whether to accept a claimant's subjective symptom testimony, an
ALJ must perform two stages of analysis: the Cotton test and a test of the
credibility of the claimant's testimony.  Smolen v. Chater, 157 F.3d 1273, 1281
(9th Cir. 1996).  When there is no evidence of malingering, or lying, the ALJ
must give clear and convincing reasons for rejecting the claimant's testimony
regarding her subjective symptoms.  Reddick v. Chater, 157 F.3d 715, 722 (9th
Cir. 1998).

The first stage of the Smolen analysis is the Cotton test.  The test imposes
only two requirements on the claimant: (1) that she must produce objective
medical evidence of an impairment or impairments; and (2) she must show that
the impairment or combination of impairments could reasonably be expected to,

not that it did in fact, produce some degree of symptoms.  Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).

The ALJ found "that the claimant's medically determinable impairments could be expected to produce the alleged symptoms."  (AR 27).  However, the second stage of the Smolen analysis is at issue as the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible beginning on July 12, 2004.  (AR 27).

The second stage of the Smolen analysis is a test of the credibility of the claimant's testimony.  To determine whether Plaintiff's testimony regarding the severity of her symptoms is credible, the ALJ may consider, among other things, the following evidence: (1) the ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  Smolen, 80 F.3d, 1284.

Here, Plaintiff's credibility was questionable, but not for all three reasons the ALJ asserts.  The ALJ erred in questioning Plaintiff's credibility on the grounds that she testified to sitting only 30 minutes before she needed to stand up due to pain.  The ALJ found this to be inconsistent with the fact that Plaintiff sat comfortably throughout the 45-minute hearing and the fact that she had driven an hour to the hearing.  (AR 27).  However, a careful reading of the hearing transcript reveals that Plaintiff did not testify to being able to only sit for 30 minutes before having to stand up due to pain.  Rather, she testified that when she stands or walks for long periods of time, she experiences pain and must sit

11

for at least 30 minutes before being <u>able</u> to stand up again.  (AR 396).

The ALJ's error, however, is "harmless error."  It does not merit a remand because the ALJ's other two findings of Plaintiff's lack of credibility support the ultimate decision to deny Plaintiff disability benefits beginning July 12, 2004.

First, Plaintiff was not credible because the problem with her knees was not documented until October 2006, well over two years after July 12, 2004, and just one month before the hearing.  Although Dr. Plunkett noted that Plaintiff complained of bilateral knee pain for several years, he also says that prior to seeing him, Plaintiff "had no treatment or evaluation for her knees."  (AR 386).  After seeing Dr. Plunkett, Plaintiff only required Motrin and shots to treat her knees.  (AR 386).  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be sufficient to discredit an allegation of disabling pain.  <u>Fair v. Bowen</u>, 885 F. 2d 597, 603 (9th Cir. 1989).  Plaintiff's unexplained failure to seek treatment for over two years, coupled with conservative treatment after an evaluation, undermines her credibility with regard to her knees problem.  Therefore, Plaintiff's testimony about disabling pain in her knees may be rejected.

Second, Plaintiff alleges pain prevents her from carrying out work activities, but she is able to carry out a range of daily activities.  Plaintiff holds a valid California driver's license with no driving restrictions.  (AR 400).  Sometimes, she drives and goes to the grocery store or bank.  (AR 397).  On the day of the hearing, she drove an hour from home to San Bernardino without stopping.  (AR 401).  Plaintiff testified that at home, she prepares food, does laundry, sweeps the trailer she and her husband live in, and washes dishes.  (AR 397, 402-403).  Plaintiff also completed an Exertional Daily Activities

12

Questionnaire where she wrote that on an average day, she washes dishes, cleans, and does other housework. She can walk one block in twenty minutes and climb three flights of stairs and still feel fine. She lifts plates and other small objects, such as one-liter bottles, on a daily basis. She also does yard work, like watering plants. (AR 100-101). The ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing…activities that are transferable to a work setting. Smolen, 80 F.3d, 1284 n.3. Activities Plaintiff regularly performs could conceivably be transferred to a work setting, particularly those the VE recommended, such as that of an assembler of small items. Therefore, Plaintiff's able lifestyle undermines her credibility.

Although disability claimants should not be penalized for trying to lead normal lives despite their limitations, when the level of their activities are inconsistent with their claimed limitations, those activities have bearing on the claimant's credibility. Reddick, 157 F.3d, 722. Surely, Plaintiff's activities fall within the purview of her efforts to try to lead a normal life. However, the level of her daily activities is inconsistent with her claimed limitations. Plaintiff claims that she cannot work at all. This Court agrees that given Plaintiff's condition, she can no longer perform work she did in the past, including handling heavy auto parts. However, Plaintiff's own purported ability to regularly wash, clean, and lift small objects does not prevent her from doing other work. The VE recommended three occupations, bench assembler, electronics worker, and eye drops assembler. Plaintiff's abilities are consistent with the light to medium exertional requirements of these jobs. Therefore, Plaintiff's testimony about pain preventing her from working may be rejected.

In sum, the ALJ did not err in rejecting Plaintiff's subjective testimony on the

basis of credibility.

## IV.  ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed and Plaintiff's Complaint is dismissed.

Dated: July 9, 2008

/ s /

_____

STEPHEN J. HILLMAN

UNITED STATES MAGISTRATE JUDGE